**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| INDIANA WESLEYAN UNIVERSITY, | ) | Case No. 1:24-cv-239 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| OLÉ HOLDINGS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**INDIANA WESLEYAN UNIVERSITY'S COMPLAINT FOR DAMAGES**
**AND DECLARATORY JUDGMENT**

Plaintiff, Indiana Wesleyan University ("IWU"), by counsel, for its Complaint for Damages and Declaratory Judgment against Defendant, Olé Holdings, Inc. ("Olé"), states:

1.    IWU is a Christian comprehensive university committed to liberal arts and professional education located in Marion, Indiana.

2.    IWU is one of the world's most experienced online universities with over 25 years of online development. It offers hundreds of online courses in over 90 degree programs.

3.    IWU and Olé entered into an agreement under which IWU would expand its online offerings into multiple universities in Ethiopia using Olé's integrated online education platform.

4.    In furtherance of the parties' agreement, IWU loaned nearly $1.7 million to Olé to aid its efforts to launch the project in Ethiopia.

5.    The parties' relationship deteriorated when Olé failed to launch the project in Ethiopia and failed to begin making payments on the loan.

6.    IWU brings this action to collect the monies it loaned to Olé, which Olé has not repaid, and for a declaratory judgment that the parties' contract is terminated.

QB\90244581.1

## PARTIES, JURISDICTION, AND VENUE

7.      IWU is an Indiana nonprofit corporation with a principal place of business located at 4201 S Washington Street, Marion, Indiana 46953. IWU is, thus, a citizen of Indiana for diversity jurisdiction purposes.

8.      Olé is a Delaware corporation with its principal place of business at 3664 Asbury Street, Dallas, Texas 75205. Olé is, thus, a citizen of Delaware and Texas for diversity jurisdiction purposes.

9.      This Court has personal jurisdiction over Olé because it purposely availed itself of the privileges of conducting business in Indiana, including:

        a.      Olé entered into multiple contracts with, and borrowed money from, IWU in Indiana;

        b.      Dalen Harrison, Olé's President and CEO, planned to visit IWU's campus for an in-person meeting on March 18, 2020, but the meeting was cancelled due to global shutdowns related to COVID-19; and

        c.      On March 14, 2022, Mr. Harrison traveled to Indianapolis, Indiana and met with IWU to discuss the project that is at issue in this lawsuit.

10.     Jurisdiction is proper in this Court under 28 U.S.C. § 1332 because the parties are completely diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.

11.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because the United States District Court for the Northern District of Indiana embraces Grant County, Indiana, where a substantial part of the events giving rise to IWU's claims occurred.

QB\90244581.1

## GENERAL ALLEGATIONS

12.     In early 2020, IWU engaged in discussions with Olé regarding enhancing and expanding IWU's international online education presence.

13.     IWU was particularly interested in Olé's efforts to collaborate with the Ethiopian government's Ministry of Science & Higher Education ("MoSHE").

14.     Between January and March 2020, IWU and Olé negotiated a proposal where IWU would provide educational services in Ethiopia through MoSHE (the "Project").

15.     In April 2020, IWU and Olé entered into the Educational Services Platform Strategic Development, Licensing, & Cooperation Agreement, commonly referred to as the Master Cooperation Agreement (the "MCA"). A true and accurate copy of the MCA, as amended by the January 28, 2021 Amendment to Agreement, is attached as **Exhibit A**.

16.     Under the MCA, the Parties agreed that:

a.     Olé would license its Educational Services Platform ("ESP") to IWU, which IWU would use to provide educational services to Ethiopian citizens, including degree programs, skills-specific training, and certifications for teachers and government employees (the "Educational Services");

b.     The total licensing fee for the ESP would be $5,000,000 (the "Licensing Fee");

c.     In exchange for the licensing of the ESP, IWU would pay Olé an initial $500,000 in two equal payments of $250,000 each (the "Initial Investment"); and

d.     The remaining $4,500,000 of the Licensing Fee would be paid through joint fundraising, on the condition that Olé would secure partnership with MoSHE.

17.     The MCA operated on the condition precedent that MoSHE and Olé would execute an agreement for the provision of educational services to Ethiopian citizens, which would result in the Ethiopian government releasing funds to: (a) pay for the use of the ESP in Ethiopia; and (b) provide scholarships and support for IWU's Educational Services.

18.     IWU made the two payments of $250,000 each to Olé on May 19, 2020, and June 18, 2020, which satisfied IWU's Initial Investment obligation.

19.     In addition to the Initial Investment, IWU loaned Olé money in multiple draws to support Olé's negotiations with Ethiopia and to develop the ESP pursuant to the MCA (the "Bridge Loan").

20.     In total, Olé borrowed $1,679,000 from IWU under the Bridge Loan over the course of thirteen separate draws:

a.      $250,000 on July 13, 2020, which Olé agreed to repay December 31, 2020; a true and accurate copy of the Bridge Letter of Agreement that evidences this draw is attached as **Exhibit B;**

b.      $125,000 on August 14, 2020, which Olé agreed to repay by December 31, 2020; a true and accurate copy of the Bridge Letter of Agreement that evidences this draw on the Bridge Loan is attached as **Exhibit C;**

c.      $125,000 on August 27, 2020, which Olé agreed to repay by December 31, 2020; a true and accurate copy of the Bridge Letter of Agreement that evidences this draw on the Bridge Loan is attached as **Exhibit D;**

d.      $125,000 on September 14, 2020, which Olé to repay by December 31, 2020; a true and accurate copy of the Bridge Letter of Agreement that evidences this draw on the Bridge Loan is attached as **Exhibit E;**

QB\90244581.1

e.        $125,000 on September 28, 2020, which Olé agreed to repay by December 31, 2020; a true and accurate copy of the Bridge Letter of Agreement that evidences this draw on the Bridge Loan is attached as **Exhibit F;**

f.        $125,000 on October 13, 2020, which Olé agreed to repay by December 31, 2020; a true and accurate copy of the Bridge Letter of Agreement that evidences this draw on the Bridge Loan is attached as **Exhibit G;**

g.        $125,000 on October 29, 2020, which Olé agreed to repay by December 31, 2020; a true and accurate copy of the Bridge Letter of Agreement that evidences this draw on the Bridge Loan is attached as **Exhibit H;**

h.        $125,000 on November 11, 2020, which Olé agreed to repay by December 31, 2020; a true and accurate copy of the Bridge Letter of Agreement that evidences this draw on the Bridge Loan is attached as **Exhibit I;**

i.        $125,000 on November 25, 2020, which Olé agreed to repay by December 31, 2020; a true and accurate copy of the Bridge Letter of Agreement that evidences this draw on the Bridge Loan is attached as **Exhibit J;**

j.        $125,000 on December 15, 2020, which Olé agreed to repay by January 31, 2021; a true and accurate copy of the Bridge Letter of Agreement that evidences this draw on the Bridge Loan is attached as **Exhibit K;**

k.        $125,000 on December 31, 2020, which Olé agreed to repay by January 31, 2021; a true and accurate copy of the Bridge Letter of Agreement that evidences this draw on the Bridge Loan is attached as **Exhibit L;**

l.      $125,000 on January 11, 2021, which Olé agreed to repay by January 31, 2021; a true and accurate copy of the Bridge Letter of Agreement that evidences this draw on the Bridge Loan is attached as **Exhibit M;**

m.      $54,000 on May 3, 2021, which Olé agreed to repay by May 30, 2021; a true and accurate copy of the Bridge Letter of Agreement that evidences this draw on the Bridge Loan is attached as **Exhibit N**

(**Exhibit B** through **Exhibit N** are collectively referred to as the "Bridge Loan").

21.      IWU has extended the due date for the Bridge Loan several times.

22.      On February 3, 2022, Mr. Harrison explained that Olé would begin repayment of the Bridge Loan upon execution of the agreement with MoSHE. A true and accurate copy of the letter is attached as **Exhibit O.**

23.      Upon information and belief, Olé has not entered into an agreement with MoSHE or the Ethiopian government for the provision of educational services.

24.      Olé owes IWU the entire outstanding balance under the bridge loan: $1,679,000.

25.      Olé has not made any payments on the Bridge Loan.

### COUNT I – BREACH OF CONTRACT

26.      IWU incorporates by reference paragraphs 1 through 25 of this Complaint as if fully restated here.

27.      The Bridge Loan constitutes a valid and enforceable contract between IWU and Olé.

28.      The Bridge Loan was in full force and effect at all times relevant to the allegations in this Complaint.

QB\90244581.1

29.    Under the Bridge Loan, IWU loan $1,679,000 to Olé and Olé agreed to repay those funds to IWU.

30.    Olé has not paid IWU any amounts owed under the Bridge Loan.

31.    There is an unpaid sum due and owing to IWU under the Bridge Loan in the amount of $1,679,000.

32.    Olé's failure to pay IWU constitutes a material breach of the Bridge Loan.

33.    IWU has suffered and continues to suffer damages as a result of Olé's breach of their agreement.

**WHEREFORE**, IWU requests that this Court enter judgment in its favor and against Olé in the amount of $1,679,000, plus pre- and post-judgment interest, and grant IWU all other appropriate relief.

## COUNT II – UNJUST ENRICHMENT

34.    IWU incorporates by reference paragraphs 1 through 25 of this Complaint as if fully restated here.

35.    At Olé's request, IWU loaned $1,679,000 to it.

36.    Olé agreed to repay IWU the amounts it loaned to Olé under the Bridge Loan.

37.    Olé has failed to repay IWU the amounts owed under the Bridge Loan.

38.    By releasing funds to Olé under the Bridge Loan, Olé has conferred a measurable benefit on IWU in the amount of $1,679,000.

39.    It would be unjust for Olé to retain the benefit conferred upon it by IWU without being required to repay IWU for the full amount of the Bridge Loan.

40.    Accordingly, pleaded in the alternative, IWU is entitled to recover the benefits that it conferred upon Olé under the theory of unjust enrichment.

**WHEREFORE**, IWU requests that this Court enter judgment in its favor and against Olé in the amount of $1,679,000, plus pre- and post-judgment interest, and grant IWU all other appropriate relief.

**COUNT III- DECLARATORY JUDGMENT**

41.     IWU incorporated by reference paragraphs 1 through 25 of this Complaint as if fully restated here.

42.     The MCA constitutes a valid and enforceable contract between IWU and Olé.

43.     A condition precedent to IWU's continued performance under the MCA is Olé's requirement to secure a contract with MoSHE under which IWU would provide the Educational Services to Ethiopian citizens.

44.     Because Olé has not secured a contract with MoSHE, IWU is discharged of its obligations under the MCA.

45.     An actual controversy exists as to whether IWU is liable for the unpaid Licensing Fees under the MCA.

46.     IWU desires a judicial determination that IWU is not liable for any of the unpaid Licensing Fees under the MCA.

47.     A judicial declaration is necessary and appropriate under the circumstances so that IWU may ascertain and understand its rights and obligations under the MCA, including whether it owes any unpaid Licensing Fees.

48.     A judicial determination at this time will lessen the financial and other burdens incurred by IWU and confirm the parties' responsibilities under the MCA.

49.     Under 28 U.S.C. § 2201, this Court is authorized to adjudicate and decide the parties' respective rights and obligations and to determine, under Indiana law, whether Olé

failed to fulfill its obligations and satisfy the conditions precedent to IWU becoming liable for any unpaid Licensing Fees.

      **WHEREFORE**, IWU requests judgment in its favor, a declaration by this Court that IWU has no further obligations or liabilities under the MCA, and an award of all other appropriate relief.

Dated:  June 7, 2024

QUARLES & BRADY LLP

*/s/ Jacob V. Bradley*

Jacob V. Bradley, #27750-49
Nicole Perkins, #38307-49
135 N. Pennsylvania Street
Suite 2400
Indianapolis, IN 46204
jacob.bradley@quarles.com
Nicole.perkins@quarles.com
(317) 957-5000 - Phone
(317) 957-5010 - Fax

*Attorneys for Indiana Wesleyan University*
